UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

THOMAS GESUALDI, LOUIS BISIGNANO,
ANTHONY D'AQUILA, MICHAEL O'TOOLE,
MICHAEL C. BOURGAL, FRANK H. FINKEL,
JOSEPH A. FERRARA, SR., MARC HERBST,
DENISE RICHARDSON, and THOMAS F.
CORBETT, as Trustees and Fiduciaries of the
Local 282 Welfare Trust Fund, the Local 282
Pension Trust Fund, the Local 282 Annuity
Trust Fund, the Local 282 Job Training Trust
Fund, and the Local 282 Vacation and Sick
Leave Trust Fund,

**REPORT AND
RECOMMENDATION**
14-cv-5276(JS)(SIL)

                              Plaintiffs,

        -against-

GRIFFIN SIGN INC. d/b/a GRIFFIN SIGN,
INC.,

                              Defendant.

-------------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

Before the Court, on referral from the Honorable Joanna Seybert, in this

action brought pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 *et seq.*, is Plaintiffs' motion for a default judgment. By

Complaint filed on October 3, 2014, DE [1], Plaintiffs Thomas Gesualdi, Louis

Bisignano, Anthony D'Aquila, Michael O'Toole, Michael C. Bourgal, Frank H.

Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson, and Thomas F.

Corbett, as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund (the

"Welfare Fund"), Pension Trust Fund (the "Pension Fund"), Annuity Trust Fund

(the "Annuity Fund"), Job Training Fund (the "Job Training Fund"), and Vacation

and Sick Leave Trust Fund (the "Vacation Fund" and, collectively, the "Plaintiffs" or

1

"Funds") commenced this action against Defendant Griffin Sign Inc. d/b/a Griffin Sign, Inc. ("Defendant" or "Griffin") to recover unpaid benefit contributions and related relief. Griffin failed to answer or otherwise respond, and on November 13, 2014, its default was noted by the Clerk of the Court, DE [6]. On December 17, 2014, Plaintiffs filed the instant motion, DE [7], seeking a default judgment and total damages of $128,749.40 for: unpaid benefit contributions; accrued prejudgment interest on unpaid and late-paid contributions, plus daily interest through the date of judgment; additional liquidated damages on unpaid and late-paid contributions, plus daily liquidated damages through the date of judgment; audit fees; attorneys' fees; and costs of the action. *See* Pl. Stmt. of Amounts Due, DE [7], at ¶ 2. The Funds also seek injunctive relief in the form of an Order requiring Griffin to submit to an audit of its books and records. *See* Pl. Memo of Law in Supp. of Def. Mot. Summ. J. at 18-19; Pl. Proposed Def. J., DE [7]. By Order dated February 26, 2015, DE [13], Judge Seybert referred the motion to the undersigned for a Report and Recommendation as to whether it should be granted and, if so, to determine the appropriate amount of damages, costs and/or fees to be awarded.

For the reasons set forth below, the Court's recommendation is that the motion be granted, and Plaintiffs be awarded total damages of $108,418.69, plus additional daily interest and damages through the entry of judgment. The Court further recommends that the branch of Plaintiffs' motion seeking injunctive relief be denied. Finally, the Court recommends that Plaintiffs' request for actual unpaid

contributions based on a sampling of pay stubs from six specific Griffin employees be denied without prejudice and with leave to present additional evidence that the Estimated Audit (defined *infra*) does not already account for these amounts.

## I.    Background

Unless otherwise noted the following facts are drawn from the Complaint ("Compl.") and accepted as true for purposes of this motion.

### A.    <u>The 2009 and 2013 CBAs</u>

Plaintiffs are jointly administered "employee benefit plans" and "multiemployer plans," within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) & (37). *See* Compl. ¶ 4. "The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union") and providing benefits to eligible participants." *Id.* ¶ 5; *see* December 16, 2016 Declaration of Theresa Cody, DE [8] ("Cody Decl."), at Ex. "A" (Trust Agreement in effect through September 23, 2012) and "B" (Trust Agreement in effect as of September 24, 2012).[1] Griffin is an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5). *See* Compl. ¶ 7.

---

[1] The Trust Agreement in effect through September 23, 2012, *see* Cody Decl., Ex. "A", and the Trust Agreement in effect as of September 24, 2012, *see id.*, Ex. "B", are collectively referred to herein as the "Trust Agreement." As relevant here, the two agreements do not materially differ from one another.

Griffin and the Union were parties to and bound by the 2009-2013 New York City Heavy Construction and Excavating Contract, in effect for the period March 1, 2011 to June 30, 2013 (the "2009 CBA"). *See id.* ¶ 8; *see also* Cody Decl., Ex. "C" (Memorandum of Agreement); *id.*, at Ex. "D" (2009 CBA). Pursuant to the terms of the 2009 CBA, Griffin was obligated to make timely contributions to the Funds on behalf of its covered employees, as well as to submit timely remittance reports stating the number of hours worked by such covered employees and its corresponding monthly contribution to each Fund. *See* Compl. ¶¶ 12-13; *see* Cody Decl. ¶ 14. The 2009 CBA incorporated the Trust Agreement by reference, binding Griffin to both. *See* Compl. ¶ 14; Cody Decl. ¶ 9.

Following the expiration of the 2009 CBA, it was succeeded by the New York City Heavy Construction and Excavation Contract, in effect for the period July 1, 2013 to June 30, 2017" (the "2013 CBA", together with the 2009 CBA, the "CBAs"). Compl. ¶ 9; *see* Cody Decl., Ex. "E" (2013 CBA). Plaintiffs do not allege that Griffin signed the 2013 CBA. However, the Trust Agreement provides, in relevant part, that an employer who is bound by one CBA "remain[s] obligated to make timely contributions . . . as set forth in the most recent [CBA] . . . unless [Plaintiffs] have received notice from the Employer, at least 60 days prior to the expiration of the most recent [CBA] to which the Employer is a party, that the Employer does not intend to sign a new [CBA] and will not contribute to the Funds for work performed" thereafter. Cody Decl., Ex. "A" at 27; *id.*, Ex. "B" at 24-25. In addition, the Trust Agreement states that if an employer makes contributions at the rates

stated in the current CBA, it is "deemed a party to that current [CBA]" and is bound thereby. *Id.*

According to Theresa Cody, a senior member of the Funds' Collections Department, Griffin never notified the Funds that it did not intend to sign a new CBA. *See* Cody Decl. ¶ 11. Rather, Plaintiffs claim that, after the expiration of the 2009 CBA, Griffin "evidenced intent to be bound to" the 2013 CBA by "remitt[ing] contributions at the rates prescribed by the 2013 CBA, which differ from the rates prescribed in the 2009 CBA," and by submitting signed remittance reports indicating that it "agree[d] to accept the terms of the Local 282 industry collective bargaining agreement covering the work performed by [its] employees." *Id.* ¶ 12; *see* Compl. ¶¶ 10-11.

The CBAs and the Trust Agreement also required Griffin to periodically submit its books and records to an audit "in order to verify that all contributions required under the CBAs ha[d] been remitted to the Funds, that such contributions ha[d] been made solely on behalf of individuals eligible to participate in the Funds, and that covered workers [we]re receiving the required benefits and/or credits." *Id.* ¶¶ 16, 19. The Trust Agreement authorizes the Funds to examine employers' books and records "at any time." Cody Decl. ¶ 33 & Ex. "A" at 27; *id.*, Ex. "B" at 25. Under the CBAs, if an employer fails to furnish its pertinent books and records for purposes of conducting an audit, the Funds may perform, at their discretion, an estimated audit using formulas set forth in the Trust Agreement. *See id.* ¶ 35. Specifically, Article IX § 1(f) of the Trust Agreement provides that:

> In the event the Employer submits the required remittance reports, but thereafter such Employer fails to submit the pertinent books and records for audit within 20 days after written demand, such failure shall be a material breach of the Trust Agreement. In such event the Trustees and/or their agents may compute the additional contributions due for any month by taking 50 percent of the number of hours reported for that month and then multiplying said number of hours by the current contribution rate.

Cody Decl. Ex. "A" at 29; *id.* Ex. "B" at 26. The Trust Agreement further provides for the payment of an "increased monthly contribution" by employers who fail to comply with the audit provisions, and sets forth a precise method of calculating it. *See id.* ¶ 37 (quoting Trust Agmt. Art. IX § 1(e)).

### B. Griffin's Late-Paid Contributions

Plaintiffs allege that Griffin paid contributions late "for various months between August 2011 and November 2013." Compl. ¶ 35. According to the Funds, Griffin was required to remit contributions on a weekly basis. *See* Cody Decl. ¶ 23.[2] However, Griffin nevertheless "reported and remitted contributions on a monthly basis." *Id.* ¶ 24. Thus, to determine the contributions Griffin owed each week, the Funds "divided the total hours [Griffin] reported by the number of weeks in the given month." *Id.* ¶ 26 & n.4. The Funds provide a detailed chart purportedly reflecting the relevant weeks (from August 5, 2011 to April 4, 2014), the amount of contributions due each week, the amounts paid, the dates on which the payments were due, and the dates on which the payments were made. *See id.* ¶ 27. The

---

[2] The Funds allege that employers are given more favorable payment terms—*e.g.*, requiring contributions to be paid within 45 days after the close of the calendar month—if they post a surety bond. *See* Cody Decl. ¶¶ 21-22. However, Griffin did not post a bond. *Id.* ¶ 23.

Funds also provide supporting back-up documentation in the form of remittance reports submitted by Griffin. *See id.*, Ex. "H" (Remittance Reports).

The Trust Agreement calls for the payment of interest, liquidated damages, attorneys' fees and costs when an employer's required contributions are not timely remitted. *See* Compl. ¶ 36. Plaintiffs claim that they requested these amounts in "various letters and communications" to Griffin, but that they remain outstanding. *See id.* ¶¶ 38-39. Accordingly, Plaintiff calculated the amounts due relative to Griffin's late-paid contributions as follows: (i) $1,696.00 in total interest, *see* December 17, 2014 Declaration of Michael S. Adler ("Adler Decl.") at ¶ 37 & Ex. "D" (Summary of Calculations); and (ii) $10,631.81 in liquidated damages, *see id.* ¶¶ 44-45.

### C. <u>Unreported Employee Pay Stubs</u>

In addition, the Funds allege that they are owed unpaid contributions for covered work performed by six specific Griffin employees. *See* Cody Decl. ¶ 28, 30. Consistent with this allegation, Plaintiffs provide a series of paystubs relating to those employees, which reflects the dates and hours of the covered work performed, as well as the applicable pay rate. *See id.,* Ex. "I" (Redacted Pay Stubs). The Funds claim that Griffin never submitted remittance reports or corresponding contributions for any of work reflected in the pay stubs. *See id.* ¶ 29. Applying the contribution rates set forth in the CBAs to the number of hours reflected on the pay stubs, the Funds determined that Griffin owes contributions for those employees in

the amount of $17,982.44, plus interest. *See id.* ¶ 32 & Ex. "J" (Summary of Calculations).

### D. Griffin's Failure to Submit Remittance Reports and the Estimated Audit

Plaintiffs further allege that "[t]hrough various letters and communications," they requested that Griffin submit to an audit for the period commencing March 1, 2011, but Griffin has failed to do so. Compl. ¶¶ 27-28. As a result, the Funds performed an estimated audit for the period covering March 1, 2011 through October 31, 2014 (the "Estimated Audit"), which found delinquent contributions in the amount of $55,531.90, plus interest. *See* Cody Decl., Ex. "K" (Audit #13-0224-E1"). In her declaration, Cody sets forth the methodology utilized by the Funds to determine the estimated amount of unpaid contributions, *see id.* ¶¶ 40-56, and attaches a detailed Audit Criteria Worksheet setting forth the Funds' calculations in this regard. *See id.*, Ex. "L" (Audit Criteria Worksheet).

### E. Griffin's Default

Based on the events outlined above, the Funds brought claims against Griffin for violations of the CBAs, the Trust Agreement, and ERISA. Griffin never responded or otherwise moved with respect to the Complaint and its default was noted by the Clerk of the Court of November 13, 2014, DE [6].

## II. Legal Standards

### A. Standard of Review

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See*

Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011); *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, 13-cv-01873, 2014 U.S. Dist. LEXIS 50752, at *6-*7 (E.D.N.Y., Feb. 28, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 49993 (E.D.N.Y., Apr. 10, 2014). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* Rule 55(b).

Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Ferrara v. PJF Trucking LLC*, 13-cv-7191, 2014 U.S. Dist. LEXIS 134095, at *9-*10 (E.D.N.Y., Aug. 14, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 133723 (E.D.N.Y., Sept. 22, 2014); *Ava Shypula*, 2014 U.S. Dist. LEXIS 50752 at *7; *Gesualdi v. Magnolia Pro Trucking Inc.*, 11-cv-14082, 2012 U.S. Dist. LEXIS 130203, at *5 (E.D.N.Y., Aug. 20, 2012) (Report and Recommendation), *adopted by*, 2012 U.S. Dist. LEXIS 130211 (E.D.N.Y., Sept. 11, 2012); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, 06-cv-1878, 2007 U.S. Dist. LEXIS 99935, at *4 (E.D.N.Y., Sept. 11, 2007) (Report and Recommendation), *adopted by*, 2007 U.S. Dist. LEXIS 72789 (E.D.N.Y., Sept. 27, 2009); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied").

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi-Parlkiet Sp. Zoo v. Seneca Hardwoods LLC*, 13-cv-4358, 2014 U.S. Dist. LEXIS 71289, at *11 (E.D.N.Y., May 23, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 83128 (E.D.N.Y., June 18, 2014) (internal quotation omitted); *see Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009). Liability is not established simply because the complaint remains unanswered. *See PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *10. This is because a default does not establish those allegations which are conclusory and it does not excuse defects in the pleadings. *See id.*; *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *Said v. SBS Elecs., Inc.*, 08-cv-3067, 2010 U.S. Dist. LEXIS 31744, at *6-*7 (E.D.N.Y., Feb. 24, 2010), *adopted as modified*, 2010 U.S. Dist. LEXIS 144067 (E.D.N.Y., Mar. 30, 2010). Accordingly, the district court must determine whether the plaintiff's allegations establish liability as a matter of law. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Ava Shylupa*, 2014 U.S. Dist. LEXIS 50752 at *8.

Courts consider three factors when determining whether to grant a default judgment: (i) whether the defendant's default was willful; (ii) whether the defendant has a meritorious defense; and (iii) the level of prejudice to the non-defaulting party if the motion is denied. *See PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *10-*11; *Magnolia Pro Trucking*, 2012 U.S. Dist. LEXIS 130203 at *6; *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, 12-cv-2067, 2013 U.S. Dist. LEXIS

111112, at *6-*7 (E.D.N.Y., Aug. 7, 2013) (Report and Recommendation), *adopted by*, 2013 U.S. Dist. LEXIS 125557 (E.D.N.Y., Aug. 29, 2013). The decision whether to grant a default judgment rests with the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, 10-cv-5270, 2014 U.S. Dist. LEXIS 39788, at *7 (E.D.N.Y., Mar. 24, 2014).

In the event that liability is established, the Court must ascertain damages with "reasonable certainty." *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *see Gesualdi v. Tapia Trucking LLC,* 11-cv-4174, 2012 U.S. Dist. LEXIS 186663, at *4 (E.D.N.Y., Oct. 15, 2012) (Report and Recommendation), *adopted by*, 2013 U.S. Dist. LEXIS 31739 (E.D.N.Y., Mar. 6, 2013). The inquest can be held by affidavit, without a hearing, so long as the Court endeavors to ensure that there is a basis for the damages specified in the default judgment. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Tapia Trucking*, 2012 U.S. Dist. LEXIS 186663 at *4-*5.

B.     **Applicable Law**

The inquiry begins with whether the factual allegations set forth in the Complaint, which are now taken as true, establish liability. *See, e.g.*, *PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *13 ("Although Defendant's default constitutes an admission of all factual allegations in the Complaint as they relate to liability, Plaintiffs must nevertheless demonstrate that the uncontested allegations set forth

valid claims"). Plaintiffs claim that Griffin's liability stems principally from its failure to timely pay contributions due under the CBAs and ERISA.

ERISA provides that an employer is obligated to make contributions to multiemployer benefits plans under a collective bargaining agreement in accordance with the agreement's terms. *See* 29 U.S.C. § 1145; *see also LaBarbera v. J.D. Collyer Equip. Corp.*, 337 F.3d 132, 134 (2d Cir. 2003) (applying 29 U.S.C. § 1145); *Tapia Trucking*, 2012 U.S. Dist. LEXIS 186663 at *5. ERISA further provides for statutory damages in the event of noncompliance as follows:

> (A) the unpaid contributions;
> (B) interest on the unpaid contributions;
> (C) an amount equal to the greater of —
> > (i) interest on the unpaid contributions or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

## III. Discussion

### A. <u>Liability</u>

Here, Plaintiffs' allegations, together with the uncontested facts before the Court, establish liability as a matter of law. *See Bricklayers Ins. & Welfare Fund v. Verse Inc.*, 12-cv-4271, 2013 U.S. Dist. LEXIS 130102, at *8 (E.D.N.Y., Aug. 20, 2013) (Report and Recommendation), *adopted by*, 2013 U.S. Dist. LEXIS 129732 (E.D.N.Y., Sept. 11, 2013). Specifically, the undisputed evidence demonstrates that

Griffin and the Union were parties to and bound by the CBAs, which incorporate the Trust Agreement by reference, for the periods from 2009 to 2013 and 2013 to 2017. These operative documents required Griffin to timely make contributions to the Funds for employees performing work covered thereunder, and specified the rights and remedies available to the Funds in the event of Griffin's noncompliance. The undisputed evidence demonstrates that, between August 2011 and April 2014, Griffin remitted its required contributions, but did so late, in violation of the CBAs. The evidence further demonstrates that Plaintiffs performed the Estimated Audit, for the period March 1, 2011 through October 31, 2014, which found that Griffin owed unpaid contributions of $55,531.90. Finally, the evidence demonstrates that, to date, Griffin has failed to cure its delinquencies or furnish its pertinent books and records for an audit, despite Plaintiffs' demands. Accordingly, and based upon my review of the supporting affidavits and annexed documentation, the Court concludes that there is a basis for liability for delinquent benefit contributions, and related relief, under ERISA and the CBAs.

**B.   Default Judgment Factors**

Having concluded that there is a basis for liability, the Court turns to the relevant factors outlined above, namely, willfulness, the existence of a meritorious defense, and prejudice, to determine whether, under the circumstances, entry of a default judgment is appropriate.

## 1. *Willfulness*

"When a defendant is continually and 'entirely unresponsive,' [its] failure to respond is considered willful." *See PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *12 (citations omitted) (finding that the defendant's failure to respond to the Complaint in an ERISA default case "sufficiently demonstrate[d] willfulness"). Plaintiffs allege that, "[t]hrough various letters and correspondence, the Funds and their legal counsel" attempted to contact Defendant for the purpose of examining its books and records, and demanding that Griffin submit outstanding remittance reports and all delinquent contribution amounts, together with interest, liquidated damages, fees and costs. *See* Compl. ¶¶ 27, 30, 33, 38; *see also* Cody Decl. ¶ 39 (noting that Griffin failed to submit to an audit "[d]espite requests"). It is undisputed that Griffin did not meaningfully respond to the Funds' efforts. Plaintiffs also submit an affidavit of service demonstrating that Griffin was served with the Summons and Complaint on October 22, 2014. *See* Affidavit of Service Through the Secretary of State, DE [4]. Griffin did not answer or otherwise respond to the Complaint, and did not seek an extension of time to respond. Finally, Plaintiffs submit Certificates of Service, DE [7, 12], establishing that Griffin was served with the instant motion and supporting papers on December 17, 2014. "There is no indication that Defendant's failure to respond to the Complaint, despite being properly served, was anything but deliberate," and therefore willful. *PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *12.

### 2. *Meritorious Defense*

Next, the Court is unable to determine whether Griffin has a meritorious defense to any of Plaintiffs' claims because it did not answer or respond to the Complaint and did not oppose this motion. *See Empire State Carpenters Welfare v. Darken Architectural Wood*, 11-cv-0046, 2012 U.S. Dist. LEXIS 5275, at *7 (E.D.N.Y., Jan. 17, 2012) (Report and Recommendation), *adopted by*, 2012 U.S. Dist. LEXIS 32924 (E.D.N.Y., Mar. 12, 2012). Accordingly, this factor weighs in favor of granting the Funds' motion.

### 3. *Prejudice*

The final factor to consider is prejudice to Plaintiffs in the event the motion is denied. A denial of the motion would be prejudicial to the Funds because there is no other method by which they can obtain relief from the Court. *See Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. JREM Constr. Corp.*, 12-cv-3877, 2013 U.S. Dist. LEXIS 23962, at *26 (E.D.N.Y., Jan. 28, 2013) (Am. Report and Recommendation), *adopted by*, 2013 U.S. Dist. LEXIS 22321 (E.D.N.Y., Feb. 12, 2013); *see also PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *21 ("Denying this motion would be prejudicial to Plaintiffs 'as there are no additional steps available to secure relief in this Court" (internal quotation marks omitted)). Accordingly, denying the motion would prejudice Plaintiffs by effectively leaving them without recourse in regard to the underlying dispute.

Based on the foregoing, the Court concludes that a default judgment is appropriate.

## IV.  Damages

The final question before the Court is whether to award damages and in what amount.  *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund Educ. and Training Fund and Other Funds*, 669 F.3d 230, 234 (2d Cir. 2012) (stating that plaintiff must still prove damages).  Accordingly, the Court must assess whether Plaintiffs have produced sufficient evidence of the damages they seek.  *See PJF Trucking*, 2014 U.S. Dist. LEXIS 134095 at *24; *Gutman v. Klein*, 03-cv-1570, 2010 U.S. Dist. LEXIS 124704, at *4-*5 (E.D.N.Y., Aug. 19, 2010) (Report and Recommendation).

### 1.    <u>Unpaid Benefit Contributions</u>

Based on Griffin's failure to furnish its pertinent books and records for an audit, the Funds performed an Estimated Audit covering the period March 1, 2011 through October 31, 2014.  *See* Compl. ¶¶ 25-27; Cody Decl. ¶ 41.  The Estimated Audit was based, in part, on remittance reports submitted by Griffin for the period March 2011 through March 2014, *see id.* ¶¶ 16, 24, 41, despite many of them indicating that during certain months Griffin's employees performed no covered work.  For the period during which Griffin failed to submit remittance reports altogether—April 2014 to October 2014, *see id.* ¶ 45—the Fund followed procedures set forth in the Trust Agreement to estimate the appropriate contribution amounts due and owing.  *See id.* ¶¶ 35-37, 45-55.  The Cody Declaration, which is undisputed, sets forth this methodology in detail, indicating that the Estimated Audit found unpaid contributions totaling $55,531.90, plus interest.  *See* Cody

Decl. ¶¶ 40-56 & Ex. "K" (Audit #13-0224-E1). Based upon this Court's review of Cody's declaration and the underlying documentation upon which her calculations rest, *see, e.g.*, *id.*, Ex. "K" & "L", it is recommended that Plaintiffs be awarded unpaid benefit contributions of $55,531.90.

As noted above, Plaintiffs also seek to recover contribution amounts Griffin was required to pay for the covered work reflected in six of its employees' pay stubs.[3] Cody states that the Funds "applied the applicable contribution rates . . . to the hours worked . . . and determined the contributions due by Fund based on the submitted pay-stubs." *Id.* ¶ 31. These calculations, which are set forth in detail in a chart annexed to Cody's declaration, *see id.*, Ex. "J", establish that the Funds failed to pay $17,982.44 in contributions for the work reflected on the paystubs.

However, the Funds elected under the Trust Agreement to conduct an Estimated Audit covering the period March 1, 2011 through October 31, 2014, which obviously subsumes the period indicated on the pay stubs, *i.e.*, April 2014 to August 2014. And, while the Court is satisfied that the Funds' calculations regarding the contributions due from the pay stubs are accurate, it nevertheless appears that the Funds are seeking to double recover—that is, to recover both: (i) the estimated contributions due for the period April to August 2014, and (ii) some portion of the *actual* contributions due for the same period. Plaintiffs do not allege

---

[3] Plaintiffs do not contend that these pay stubs represent all of the covered work for which Griffin owes delinquent contributions. In fact, Plaintiffs concede that "in all probability, the pay stubs understate the total number of hours worked by all Griffin employees" during the relevant time period as "they simply reflect the hours worked by the employees in question for certain weeks." *See* Cody Decl. ¶¶ 47-48. Rather, Plaintiffs rely upon the pay stubs to the extent that they provide direct evidence of a limited portion of Griffin's actual delinquent contributions during this time.

that they accounted for the pay stubs in preparing the Estimated Audit or that the latter is reconciled to reflect the former.[4]  As a result, the Court discerns no principled justification for awarding both, and Plaintiffs have not provided one. Accordingly, the Court recommends that Plaintiffs be denied additional unpaid benefit contributions on the basis of the pay stubs, without prejudice and with leave to present additional evidence that the Estimated Audit does not already account for the amounts reflected in the pay stubs.

### 2.  Interest on Unpaid/Late Contributions

Plaintiffs next seek prejudgment interest on Griffin's unpaid and late-paid benefit contributions pursuant to the CBAs and ERISA.  The Trust Agreement provides for the payment of interest at a rate of 1½ percent per month, or 18 percent per year.  *See* Cody Decl. ¶¶ 57-58; *id.* Ex. "A" at 61 (Amendment to Trust Agmt.) & Ex. "B" at 27 (Trust Agmt. Art. IX § 3).  With respect to the principal unpaid contribution amount reflected in the Estimated Audit, Plaintiffs calculate prejudgment interest accrued through December 1, 2014 as $8,339.44.  *See* Cody

---

[4] In this regard, Plaintiffs assert that:

> For months where hours were reported on remittance reports [March 2011-March 2014], estimated contributions were determined by taking 50 percent of the number of hours reported for that month and then multiplying said number by the applicable contribution rate.  For months where remittance reports were not submitted [April 2014-October 2014], contributions due were estimated by adding 10% to the number of hours for the month in which the greatest number of hours were reported in the previous twelve months, and multiplying that number of hours by the applicable contribution rate.

Pl. Memo of Law in Supp. of Def. J. at 11-12.  This explanation makes clear that, in preparing that portion of the Estimated Audit covering the period April 2014 to October 2014, Plaintiff failed to account for the sampling of pay stubs preserved from the period April 2014 to August 2014.  The Court notes that the Trust Agreement does not obligate Plaintiffs to reconcile the Estimated Audit in this way.  However, because the Funds elected not to utilize the paystubs in preparing the Estimated Audit, fairness dictates that they be precluded from now seeking recovery for both.

18

Decl., Ex. "K".[5]  Based upon this Court's review of the supporting documentation upon which Plaintiffs' calculations rest, it is recommended that Plaintiffs be awarded accrued prejudgment interest on the Estimated Audit, calculated through December 1, 2014, in the amount of $8,339.44.

In addition, because the principal amount remains outstanding, daily interest has continued to accrue (and will continue to accrue) for each day until judgment is entered.  Accordingly, the Court finds that Plaintiffs are entitled to an additional $4,298.66, representing accrued prejudgment interest on the Estimated Audit from December 2, 2014 through May 8, 2015,[6] together with per diem interest at a rate of $27.38 until judgment is entered.  To the degree the Court finds no basis for an additional award of unpaid contributions based upon the pay stubs, it similarly recommends that no prejudgment interest be awarded on that amount.

Plaintiffs also seek prejudgment interest on the contribution amounts that Griffin paid late.  As noted above, the Funds provide a detailed chart outlining the relevant weeks (from August 5, 2011 to April 4, 2014), the amount of contributions due each week, the amounts paid, the dates on which the payments were due, and the dates on which the payments were made.  *See* Cody Decl. ¶ 27; Adler Decl. ¶ 16. In addition, the Funds provide supporting back-up documentation in the form of the underlying remittance reports submitted by Griffin.  *See id.*, Ex. "H" (Remittance

---

[5] This figure represents the interest collectively accrued on each of the five Local 282 Funds. Plaintiffs' evidence further breaks the calculation down as follows: $2,757.90 for the Welfare Fund, $2,458.51 for the Pension Fund, $2,071.62 for the Annuity Fund, $21.36 for the Job Training Fund, and $1,030.05 for the Vacation Fund.  *See* Cody Decl., Ex. "K" at last four pages.

[6] This figure was calculated by taking the number of days between December 2, 2014 and May 8, 2015 (157 days) and multiplying it by the daily interest rate of $27.38 ($55,531.90 (unpaid contributions) x 0.18 (yearly interest) = $9,992.50 (yearly interest) / 365 days = $27.38 per day interest)).

Reports). Based on these materials, Plaintiffs calculate their accrued interest on a weekly basis, through the respective dates paid, as totaling $1,696.00.[7] The Court has reviewed the documentation before it and finds that it satisfactorily establishes the damages sought in this regard. Accordingly, the Court recommends that Plaintiff be awarded prejudgment interest on late-paid contributions in the amount of $1,696.00.

### 3. Additional Damages on Unpaid/Late Contributions

Under the Trust Agreement and the statute, Plaintiffs are entitled to additional damages in an amount equal to the greater of: (i) the interest charged on the unpaid contributions, or (ii) a liquidated damages award equal to 20 percent of the unpaid contributions. *See* Cody Decl., Ex. "A" at Art IX § 3(d); *id.*, Ex. "B" at Art. IX § 3(c). Accordingly, Plaintiffs seek additional damages in connection with the unpaid contributions established by the Estimated Audit and the late-paid contribution amounts. *See* Adler Decl. ¶¶ 43-50.

With regard to the Estimated Audit, the accrued prejudgment interest on unpaid contributions as of May 8, 2015 is $12,638.10, which exceeds 20 percent of the principal delinquent amount, or $11,106.38. Accordingly, the Court recommends a liquidated damages award of $12,638.10 on the unpaid contributions. And, "[s]imilar to the amount of interest, the liquidated damages award continues to accrue at a daily rate of [$27.38]" each day until judgment is entered. *Magnolia Pro Trucking*, 2012 U.S. Dist. LEXIS 130203 at *23 (citing *Ferrara v. Metro D*

---

[7] This figure accounts for a $793.23 interest payment previously made by Griffin in contemplation of a "settlement that was never finalized." Adler Decl. ¶ 36.

*Excavation & Found., Inc.*, 10-cv-4215, 2011 U.S. Dist. LEXIS 91283, at *15-*16 (E.D.N.Y., July 7, 2011) (Report and Recommendation), *adopted by*, 2011 U.S. Dist. LEXIS 91157 (E.D.N.Y., Aug. 16, 2011)).  As noted above, to the degree the Court finds no basis for an additional award of unpaid contributions based upon the pay stubs, it similarly recommends that no liquidated damages be awarded on that amount and this time.

With regard to the late-paid contributions, 20 percent of the total delinquent amount (*i.e.,* $53,159.08, *see* Adler Decl., Ex. "D") is $10,631.82, which exceeds the accrued interest, or $1,696.00.  Accordingly, the Court recommends a liquidated damages award of $10,631.82 on the late-paid contributions.  However, because the underlying amounts do not remain outstanding, there is no basis for a continuing award of per diem damages on the late-paid contributions.

4. **Audit Fees**

Plaintiffs further seek costs associated with the Estimated Audit.  *See* Adler Decl. ¶ 51-52; Cody Decl. ¶ 66-67.  "While ERISA does not explicitly allow for recovery of auditor fees, it authorizes 'such other legal and equitable relief as a court deems appropriate.' 29 U.S.C. § 1132(g)(2)(E).  Based on this language, courts have routinely interpreted § 1132(g)(2)(E) of ERISA to authorize the cost of audits as part of a damages award."  *PJF Trucking LLC*, 2014 U.S. Dist. LEXIS 134095 at *38-*39 (collecting cases).  Under the Trust Agreement, Plaintiffs are entitled to auditor's fees in the amount of "$350, or such other amounts as the Trustees in their discretion shall apply . . . where: (i) "[i]t is determined by such audit that the

amount of the Employer's principal delinquent contributions to the Funds for the period covered by the audit exceeds . . . . $2,000 in the aggregate. . . ."; or (ii) "collection of the Employer's delinquent contributions reported by the audit is referred to the Fund's attorney, irrespective of whether such collection involves suit or other court proceeding." *See* Cody Decl., Ex. "A" and "B" at Art. IX § 3(b). Both conditions for an award of auditor's fees are satisfied here. Accordingly, the Court recommends that Plaintiffs be awarded reimbursement of audit fees in the amount of $350.00.

**5.      Reasonable Attorneys' Fees**

Plaintiffs also request attorneys' fees in the amount of $17,684.00. *See* Adler Decl. ¶ 60. Such fees are recoverable under ERISA. *See* 29 U.S.C. § 1132(g)(2). The Trust Agreement similarly provides for the recovery of attorneys' fees in an amount "equal to the actual amount to be billed to the Trustees by their counsel for work performed in connection with th[e] matter." *See* Cody Decl., Ex. "A" & "B" at Art. IX § 3(a).

"Courts within the Second Circuit determine attorneys' fees according to a standard of 'presumptively reasonable fee.'" *Magnolia Pro Trucking*, 2012 U.S. Dist. LEXIS 130203 at *24 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2008); *Arbor Hill Concerns Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2007)). Under this method, "fees are calculated by multiplying a reasonable hourly rate by a reasonable number of expended hours." *Tapia Trucking*, 2012 U.S. Dist. LEXIS 186663 at *9-*10 (citing *Arbor Hill*,

575 F.3d at 186-90). "The Court has 'considerable discretion' in determining the presumptively reasonable fee; however, it should 'bear in mind all case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate.' " *Id.* (quoting *Arbor Hill*, 575 F.3d at 190). "Ultimately, the Court should be guided by what a 'reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively' would be willing to pay.' " *Id.* (quoting *Arbor Hill*, 575 F.3d at 184).

The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged. *See Natale v. Country Ford Ltd.*, 10-cv-4128, 2014 U.S. Dist. LEXIS 132832, at *17 (E.D.N.Y., Aug. 20, 2014) (" 'The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged.' " (quoting *Finkel v. Omega Comm'n Servs.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008)); *see also generally N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). A request for an award of attorneys' fees must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *See Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1160-61 (2d Cir. 1994).

"This District has 'routinely approved hourly rates ranging from $200-$400 for partners, $100-$300 for associates, and $70-$90 for paralegals." *Tapia Trucking*,

2012 U.S. Dist. LEXIS 186663 at *12 (quoting *Magnolia Pro Trucking Inc.*, 2012 U.S. Dist. LEXIS 130203 at *27). "However, courts in this District have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range." *Id.* (citations omitted). Here, Plaintiffs claim that the Funds "agreed to pay higher . . . rates for certain types of work performed by the Firm [Cohen, Weiss and Simon LLP] than they do for other types of work performed by the Firm." Adler Decl. ¶ 54. Specifically:

> [T]he Funds agreed to pay higher rates for work performed by the Firm in obtaining access to Griffin's books and records for an audit's conduct (which includes performing the estimated audit) than work performed by the Firm for purposes of collecting contributions due other than pursuant to the estimated audit. . . . For matters relating to the audit, the Funds agreed to pay the following amounts billed on an hourly basis . . .: $400 an hour for partner [time], $375 an hour for senior associate time, and $110 an hour for paralegal time. . . . For all other matters, the Funds agreed to pay the following amounts bills on an hourly basis . . .: $275 per hour for partner time through July 1, 2014, $290 per hour for partner time as of July 2, 2014, $250 per hour for senior associate time through July 1, 2014, $265 per hour for senior associate time as of July 2, 2014, $225 per hour for junior associate time through July 1, 2014, $100 per hour for paralegal time through July 1, 2014, and $105 per hour for paralegal time as of July 2, 2014.

Adler Decl. ¶¶ 55-57.

Based on the multi-tiered pay scale outlined above, Plaintiffs seek reimbursement for legal services rendered by ten separate individuals, including: partner Michael S. Adler, at rates of $250, $265, and $290 per hour; partner Joseph J. Vitale, at rates of $275 and $290 per hour; partner David R. Hock, at rates of $250, $275, and $290 per hour; associates Noelia E. Hurtado and Danya Ahmed, at rates of $225 per hour; paralegal George T. Kramer, at rates of $105 and $115 per

hour[8]; paralegal Elizabeth L. Ellis, at a rate of $105 per hour; paralegal Lev Tsukerman, at rates of $100 and $105 per hour; paralegal Keri M. Judd, at a rate of $100 per hour; and paralegal Ross S. Pollack, at a rate of $100 per hours. *See* Adler Decl. ¶ 60. Plaintiffs support their request with contemporaneous time records that detail the tasks the attorneys and paralegals completed for this case, and the number of hours expended on each task. *See id.*, Ex. "F" (Cohen, Weiss and Simon LLP Billing Records).

Cohen, Weiss and Simon LLP (hereinafter, the "Firm") "is engaged almost exclusively in the representation of labor unions and employee benefit plans." *Id.* ¶ 62. Vitale "is a 1989 graduate of Fordham University Law School, and has been engaged in labor and employment benefits practice, including experience litigating cases to collect delinquent contributions since 2009." *Id.* ¶ 63. Vitale "oversees the Firm's Funds related caseload." *Id.* Hock is a 1999 graduate of Washington College of Law American University and "has been engaged in labor and employment practice since 2000." *Id.* ¶ 64. Hock previously served as "in-house counsel to a national multi-employer pension fund based in Alexandria Virginia." *Id.* Adler is a 2002 graduate of the George Washington University Law School and has "been engaged in employee benefits practice, including experience litigating cases to collect delinquent contributions, since 2003." *Id.* ¶ 65. Previously, Adler was associated with another law firm "which also exclusively represents labor unions and employee benefit plans." *Id.* Vitale, Hock, and Adler

---

[8] It is unclear whether these rates coincide with particular dates, as Plaintiffs' explanation of the billing structure omitted any agreement between the Funds and their counsel to pay $115 per hour for paralegal time. *See* Adler Decl. ¶ 60.

each are counsel of record in over 200 cases, many of which were filed on behalf of the Funds. *See id*. ¶¶ 63-65. Hurtado and Ahmed have been practicing labor and employment law since their graduations from the University of Connecticut Law School in 2008 and the Pennsylvania State University Dickinson School of Law in 2010, respectively. *See id.* ¶¶ 66-67.

Based upon the Court's knowledge of the rates generally charged in the Eastern District for litigating ERISA-default cases, I find that the rates charged by Adler, Vitale, Hock, Hurtado, and Ahmed are not unreasonable and are generally within the approved range for attorneys of comparable skill performing work of comparable complexity. *E.g.*, *Ferrara v. Prof'l Pavers Corp.*, 11-cv-1433, 2013 U.S. Dist. LEXIS 45944, at *26-*27 (E.D.N.Y., Feb. 15, 2013) (Report and Recommendation), *adopted by*, 2013 U.S. Dist. LEXIS 40907 (E.D.N.Y., Mar. 23, 2013) (approving $400 per hour for partners, $300 for senior associates, and $200 for junior associates); *see also Gesualdi v. Seacoast Petroleum Prods., Inc.*, 14-cv-1938, 2015 U.S. Dist. LEXIS 40787 (E.D.N.Y., Mar. 3, 2015) (Report and Recommendation), *adopted by*, 2015 U.S. Dist. LEXIS 40282, at *35-*42 (E.D.N.Y., Mar. 28, 2015) (approving $300 for partner time and $275 for junior associate time); *Trs. of the 1199 SEIU Health Care Emples. Pension Fund v. Traymore Chemists, Inc.*, 13-cv-4070, 2014 U.S. Dist. LEXIS 118881, at *26-*28 (E.D.N.Y., June 25, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 118232 (E.D.N.Y., Aug. 25, 2014) (approving $300 per hour for partner time and $275 per hour for junior associate time).

However, "[h]ourly rates for paralegal assistants in the Eastern District range from $70 per hour to $100 per hour." *Id.* at *27-*28 (collecting cases). And, while this Court has, in prior cases, recommended hourly rates for paralegals toward the upper end of the approved range, and above, it has typically done so based upon a representation as to the qualifications of the individuals involved. *See, e.g.*, *Gesualdi v. Reliance Trucking of GC Inc.*, 14-cv-4112, 2015 U.S. Dist. LEXIS 47697, at *31-*32 (E.D.N.Y., Mar. 19, 2015) (Report and Recommendation), *adopted by*, 2015 U.S. Dist. LEXIS 47070 (E.D.N.Y., Apr. 10, 2015) (approving $110 per hour to "experienced paralegal with over ten years of litigation experience"). Here, however, Plaintiffs seek rates between $100 and $115 for five separate paralegals without providing any indication as to their relevant experience, qualifications, or contributions to the case. This Court, in *Reliance Trucking*, *supra*, cited with approval Judge Scanlon's opinion in *Gesualdi v. Interstate Masonry Corp.*, 12-cv-0383, 2014 U.S. Dist. LEXIS 42554 (E.D.N.Y., Feb. 14, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 42483 (E.D.N.Y., Mar. 25, 2014), which reduced a paralegal's charged hourly rate of $110 to $90. There, Judge Scanlon explained that while the court "recognize[d] that in some circumstances having an extremely experienced paralegal may be of special benefit to a case so as to justify a premium hourly rate, [the] Plaintiffs [had] not explain[ed] why or if that was the case" there. This is consistent with the well-established principle that the party moving for attorneys' fees bears the burden of justifying the hourly rates sought. *See Traymore Chemists*, 2014 U.S. Dist. LEXIS 118881 at *24

(citations omitted). Without the benefit of any information to "inform and assist the [C]ourt in the exercise of its discretion," *id.*, application of these principles requires a significant reduction in the hourly rates sought for Kramer, Ellis, Tsukerman, Judd, and Pollack.

Based upon the Court's review of prior decisional law in this District, it is recommended that the hourly rate for all five paralegals be reduced to $90 per hour. *Accord Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Temperini Mech., Inc.*, 12-cv-05646, 2014 U.S. Dist. LEXIS 132031, at *7-*8 (E.D.N.Y., Sept. 19, 2014) (reducing hourly rates for legal assistant services to $90); *Trs. of Empire State Carpenters Annuity v. Tri-State Acoustics Corp.*, 13-cv-5558, 2014 U.S. Dist. LEXIS 128463, at *25 (E.D.N.Y., July 1, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 127750 (E.D.N.Y., Sept. 12, 2014) (reducing rates for legal assistant services to $75 per hour and collecting cases); *Gesualdi v. Dan Yant, Inc.*, 6 F. Supp. 3d 264, 273-74 (E.D.N.Y. 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 36911 (E.D.N.Y. Mar. 19, 2014) (awarding $100 per hour rate for paralegal); *Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. JREM Constr. Corp.*, 12-CV-3877, 2013 U.S. Dist. LEXIS 23962, at *26 (E.D.N.Y., Jan. 28, 2013) (Am. Report and Recommendation), *adopted by*, 2013 U.S. Dist. LEXIS 22321 (E.D.N.Y., Feb. 12, 2013) (finding $88 per hour for legal assistant's work reasonable); *Magnolia Pro Trucking*, 2012 U.S. Dist. LEXIS 130203 at *29 (awarding $90 per hour rate for paralegal); *Finkel v. Detore Elec. Constr. Co.*, 11-CV-0814, 2012 U.S. Dist. LEXIS 46424, at *34-*35 (E.D.N.Y., Mar. 6, 2012) (Report

and Recommendation), *adopted by*, 2012 U.S. Dist. LEXIS 45659 (E.D.N.Y., Mar. 28, 2012) (awarding $80-$90 for paralegals);.

As to the number of hours billed, "[c]ourts in this district have found up to 20 hours of work on an ERISA default judgment to be reasonable." *Trs. of Empire State Carpenters Annuity v. Archetype Constr. Corp.*, 13-cv-1877, 2014 U.S. Dist. LEXIS 131627, at *14 (E.D.N.Y., Aug. 18, 2014) (Report and Recommendation), *adopted in relevant part by*, 2014 U.S. Dist. LEXIS 130866 (E.D.N.Y., Sept. 16, 2014); *cf. Seacoast Petroleum Prods., Inc.*, 2015 U.S. Dist. LEXIS 40787 at *38-*42 (collecting cases approving between 21.10 and 32.40 hours of work on ERISA-default cases). Plaintiffs here seek reimbursement for 88.8 hours of work. The Court notes the following with respect to its review of the Firm's billing records: (i) over the course of more than two years leading up to this action, between August 2011 and October 3, 2014, the Firm sent its clients a breathtaking 30 bills on this case for 29.2 hours of work unrelated to the litigation itself, at a cost of $4,641.50; (ii) the Firm spent only 6.9 hours of work preparing and filing the Complaint, as well as transmitting it to a process server for service, all at a combined cost of only $1,052; and (iii) the Firm spent 52.50 hours preparing the instant motion, 31.4 hours of which were expended by attorneys, at a total cost of $11,969.50. *See* Adler Decl, Ex. "F". This sum dramatically exceeds the approved range for similar cases, and the Court recommends that it be discounted.

Initially, it warrants noting that Plaintiffs offer no substantive explanation for expending more than triple the hours on this case than courts have deemed

appropriate for similar ones. Indeed, the Court is not unaware that unusual or unforeseen circumstances sometimes require additional work, which in turn generates additional fees. *See Prof'l Pavers*, 2013 U.S. Dist. LEXIS 45944 at *28-*29 (holding that excessive time spent litigating was necessitated by factually atypical case, and substantial discovery, including depositions and settlement negotiations); *Gesualdi v. Gen. Concrete, Inc.*, 11-cv-1866, 2013 U.S. Dist. LEXIS 42385, at *26-*27 (E.D.N.Y., Feb. 1, 2013) (Report and Recommendation), *adopted in relevant part by*, 2013 U.S. Dist. LEXIS 40441 (E.D.N.Y., Mar. 21, 2013) (noting that "counsel's late appearance in th[e] action" had "led to postponements of the damages inquest, additional written motion practice, and time spent by the Trustees' counsel attempting to reach a settlement with the [Defendant]" thereby "satisfactorily explain[ing] why the hours billed in th[at] matter [58.7] exceeded those typically billed in an ERISA default case"). But here, the Funds allege no such circumstances, stating simply that:

> [C]onsiderable time and effort was in this action was expended by counsel relat[ing] to . . . requesting payment of unpaid contributions . . . requesting the audit, negotiating with Griffin before the complaint's filing, drafting demand letters, reviewing documents concerning the case, discussing the matter with the Fund Office, preparing memorandums to the Trustees updating as to the case status and requesting guidance, drafting the complaint, arranging for service of process, and preparing this motion for default judgment.

Pl. Memo of Law in Supp. of Def. J. at 16. The billing records make perfectly clear that considerable time was spent on these tasks—however, Plaintiff's burden is not merely to establish that the time was spent; it is to prove that the time was reasonably and necessarily spent in the prosecution of this action. Bare recitals of

this standard will not suffice. *Cf. Natale*, 2014 U.S. Dist. LEXIS 132832 at *17; *Gen. Concrete*, 2013 U.S. Dist. LEXIS 42385, at *25.

In addition, Plaintiffs fail to address to the satisfaction of this Court the glaring fact that ten separate individuals, five of them attorneys, were assigned to perform the limited work associated with this unopposed and straightforward case. *See American Lung Association v. Reilly*, 144 F.R.D. 622, 627 (E.D.N.Y., Nov. 9, 1992) (deducting number of hours requested in a fee application where the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work") (citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) ("the more lawyers representing a side of the litigation, the greater the likelihood will be for . . . [noncompensable] . . . duplication of services")).

As a result, the Court recommends reducing the number of hours sought, as outlined below. First, the Court refers to *Gesualdi v. Fortunata Carting, Inc.*, 5 F. Supp. 3d 262 (E.D.N.Y. 2014), *adopted by*, 2014 U.S. Dist. LEXIS 36281 (E.D.N.Y., Mar. 19, 2014), where a court in this District observed that Cohen, Weiss and Simon, LLP—the same attorneys of record here—spent an exorbitant amount of time preparing the motion for default judgment (there, 58.6 hours, including 13.9 of attorney time and 44.70 of paralegal time). *See id.* at 281. Recognizing that "[c]ourts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case," *id.*, the Court approved a 50% reduction in paralegal time, even though that case was "more complicated than a typical ERISA default case." *Id.* at 282. By contrast, this ERISA default case is not more

complicated than a typical one, and yet the Firm still spent 52.5 hours (consisting of 31.4 attorney hours and 21.1 paralegal hours) on the instant motion alone. Accordingly, the Court adopts the approach espoused in *Fortunata Carting*, and recommends a 50% reduction in the number of hours paralegals spent preparing the instant motion, from 21.1 to 10.55.

Second, the Court is hard-pressed to recommend a fee award representing the two years' worth of billing that took place prior to the commencement of this action and was unrelated to the research and preparation of initiatory papers. In *Finkel v. Hall-Mark Elec. Supplies Corp.*, 07-cv-2376, 2009 U.S. Dist. LEXIS 104887, at *38-*39 (E.D.N.Y., Sept. 25, 2009), *adopted in relevant part by*, 2009 U.S. Dist. LEXIS 97435 (E.D.N.Y., Oct. 20, 2009), another case involving present counsel, the Court noted that, while the Firm "sufficiently document[ed] the 109.4 hours" it billed on the matter, that number "seem[ed] excessive" in a case where the defendant defaulted. The court there adopted an "acceptable method for 'trimming the fat' from a fee application . . . that consumes fewer judicial resources than a painstaking review of each time-entry"—an across-the-board percentage cut. There, Judge Orenstein recommended, and Judge Garaufis adopted, a 40% reduction in the total number of hours the Firm billed. Here, rather than engage in "a painstaking review" of each entry on the 30 separate bills the Firm generated from 2011 to the time of filing, the Court recommends a 40% across-the-board cut to the fees claimed, from $4,641.50 to $2,784.90. *Cf. Ass'n for Retarded Children*, 711 F.2d 1136 (2d Cir. 1983) ("In similar cases with voluminous fee applications, courts have recognized

that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. . . . Th[o]se courts have endorsed percentage cuts as a practical means of trimming fat from a fee application" (collecting cases)).

Based on the foregoing, I recommend that Plaintiffs be awarded $14,465.90 in attorneys' fees, derived as follows: (i) $2,784.90 for 17.52 hours of "pre-commencement" work between 2011 and the time of filing the Complaint; (ii) $1,052 for time spent preparing, filing, and serving the Complaint; (iii) $9,679.50 for the time spent by attorneys preparing the instant motion; and (iv) $949.50 for 10.55 hours of time spent by paralegals preparing the instant motion, at a flat rate of $90 per hour each.

### 6.    *Costs of the Action*

Plaintiffs also seek reimbursement for costs which total $466.87.  *See* Adler Decl. ¶ 68.  Specifically, Plaintiffs seek to recover the $400 filing fee for this action, $62 related to effecting service of process upon Defendant, and minor miscellaneous costs for postage and copying.  *See id.* Consistent with its request, Plaintiffs provide an invoice from Servico, the company that effected service process, *see id.*, Ex. "G" (Invoice), and a detailed description of the methods by which copying and postage costs are determined.  *See id* ¶¶ 69-76.

ERISA provides for the recovery of costs associated with the litigation, *see* 29 U.S.C. § 1132(g)(2)(D), and "[a] court will generally award 'those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee paying clients,' " *Finkel v. Jones Lang LaSalle*, 08-cv-2333, 2009 U.S. Dist. LEXIS

129926, at *16 (E.D.N.Y., Nov. 12, 2009) (Report and Recommendation), *adopted by*, 2009 U.S. Dist. LEXIS 121279 (E.D.N.Y., Dec. 23, 2009) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). This Court finds Plaintiffs' request for costs reasonable and adequately supported. *See id.* (awarding $464.68 for "filing fees, service of process, and some postage and photocopying"); *see also Ava Shypula Testing & Inspection,* 2014 U.S. Dist. LEXIS 50752 at *19 (awarding $601.80 for the court-filing fee, service of process on the defendant, postage, photocopying, and accessing the docket); *PJF Trucking LLC*, 2014 U.S. Dist. LEXIS 134095 at *47-*48 (awarding $492.69 for costs associated with service of process, postage, and copying); *Bldg. Material Teamsters*, 2012 U.S. Dist. LEXIS at *23-*24 (awarding $386.24 for filing fees, photocopies and postage); *Tapia Trucking*, 2012 U.S. Dist. LEXIS 186663 at *15 (awarding $625.04 for "court filing fees, service of process costs, and other related fees, including photocopying and postage"); *Magnolia Pro Trucking*, 2012 U.S. Dist. LEXIS 130203 at *33-*34 (awarding $588.85 for "postage, process service fees and court filing fees"). Accordingly, the Court recommends that Plaintiffs be awarded $466.87 in costs.

## 7.    *Injunctive Relief*

Finally, Plaintiffs argue that notwithstanding an award of damages, they are entitled to an injunction requiring Griffin to submit to an audit, including furnishing outstanding remittance reports and its relevant books and records. *See* Pl. Memo of Law in Supp. of Def. J. at 18-19; Pl. Proposed Default Judgment, DE [7]. The Court disagrees and recommends that such relief be denied.

"When a plaintiff moves for a preliminary injunction on a motion for default judgment, injunctive relief may be granted where 'the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Finkel v. Universal Sec. Sys.*, 10-cv-4520, 2011 U.S. Dist. LEXIS 128239, at *33-*34 (E.D.N.Y., Sept. 9, 2011) (quoting *LaBarbera v. Frank J. Batchelder Transp. LLC*, 08-cv-3387, 2009 U.S. Dist. LEXIS 129925, at *16 (E.D.N.Y., Jan. 8, 2009) (Report and Recommendation), *adopted by*, 2009 U.S. Dist. LEXIS 7072 (E.D.N.Y., Feb. 2, 2009)). "Section 502 of ERISA provides that the Court may award 'such other legal and equitable relief as [it] deems appropriate' in an action for nonpayment of employee contributions. 29 U.S.C. § 1132(g)(2)(E). Thus, injunctive relief is available under the statute and the first prong of the test is satisfied." *Id.*

As for the second prong, Plaintiffs must establish irreparable harm should the injunction not be granted, as well as the absence of another adequate remedy at law. *See id.* at *34 (citing *Gesualdi v. MB3 Trucking, Inc.*, 10-cv-0573, 2010 U.S. Dist. LEXIS 128119, at *25-*26 (E.D.N.Y., Sept. 30, 2010) (Report and Recommendation), *adopted by*, 2010 U.S. Dist. LEXIS 128125 (E.D.N.Y., Dec. 2, 2010)). Beyond conclusorily arguing that money damages "are not sufficient to make [them] whole," Pl. Memo of Law in Supp. of Def. J. at 19, Plaintiffs have failed to demonstrate the necessity of an injunction here.

Because it is undisputed that Griffin was obligated to make contributions to the Funds on behalf of its covered employees, and to submit to an audit of its books

and records "at any time," the Order Plaintiffs seek "would require [Griffin] to do no more than comply with its existing obligations under the CBA and ERISA." *LaBarbera v. Best Friends Trucking Co.*, 07-cv-4226, 2010 U.S. Dist. LEXIS 41075, at *40-*41 (E.D.N.Y., Feb. 19, 2010) (Report and Recommendation), *adopted in relevant part by*, 2010 U.S. Dist. LEXIS 41202 (E.D.N.Y., Apr. 27, 2010). Consequently, "the lack of an injunction cannot possibly subject [the Funds] to any harm at all, much less irreparable harm. Indeed, by requesting relief that would do nothing to alter the parties' respective rights or obligations, the [Funds'] application for an injunction is manifestly moot." *Id.*; *see also Universal Sec. Sys.*, 2011 U.S. Dist. LEXIS 128239 at *35-*36 (denying equitable relief ordering defendant to submit specific payroll reports); *LaBarbera v. Andrew's Trucking Corp.*, 06-cv-6243, 2007 U.S. Dist. LEXIS 97982, at *13-*14 (E.D.N.Y., Aug. 6, 2007) (Report and Recommendation), *adopted by*, 2007 U.S. Dist. LEXIS 86635 (E.D.N.Y., Nov. 26, 2007) (denying permanent injunction where plaintiffs failed to demonstrate that they would have suffered irreparable harm should the injunction not be granted or that the remedy at law is inadequate).

Furthermore, Plaintiffs have not satisfied their burden of demonstrating that money damages are insufficient to make them whole. Plaintiffs elected under the Trust and Agreement to perform an estimated audit of Griffin for the period March 1, 2011 through October 31, 2014 and this Report recommends awarding estimated damages based thereupon, calculated in the manner prescribed under the CBAs and ERISA. Therefore, it makes no sense "at this stage to issue an affirmative

injunction ordering defendant[] to submit to an audit for this exact same period of time. . . ." *Gesualdi v. MBM Indus., Inc.*, 10-cv-2607, 2010 U.S. Dist. LEXIS 96319, at *9 (E.D.N.Y., Sept. 15, 2010) (declining to award equitable relief in ERISA default case where plaintiffs were already recovering estimated damages calculated in accordance with the CBA and Trust Agreement). Insofar as Plaintiffs have sought and are being awarded "damages for the period that defendants failed to pay contributions, interest on those unpaid [and late-paid] contributions, additional interest and/or liquidated damages through the date that the Clerk enters Judgment in this action, [audit fees], and attorneys' fees and costs for bringing this action," *see id.*, they have not made an adequate showing that they are also entitled to a permanent injunction covering the same period. *Cf. Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Arista Plumbing Heating & Piping Corp.*, 12-cv-5130, 2013 U.S. Dist. LEXIS 185821, at *22-*23 (E.D.N.Y., Feb. 10, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 29098 (E.D.N.Y. Mar. 5, 2014) (granting equitable relief in an ERISA default case because the CBA at issue did not contain an estimated audit provision, resulting in the plaintiff having no remedy at law and necessitating an affirmative injunction to calculate damages); *see Ferrara v. Metro D Excavation & Found., Inc.*, 2011 U.S. Dist. LEXIS 91283 at *24 (denying request in ERISA case for an order requiring employer to submit to an audit because report already recommended that plaintiff be awarded "estimated unpaid contributions in accordance with the formulas set forth in the trust

agreement"). Accordingly, the Court recommends that Plaintiffs' request for injunctive relief be denied.

## V. Conclusion

In accordance with the foregoing, the undersigned recommends that the District Court grant Plaintiffs' motion for a default judgment and award damages as follows:

| | | |
|---|---|---|
| Unpaid Contributions | | $55,531.90 |
| Interest on Unpaid Contributions Calculated Through 5/8/15 | | $12,638.10 |
| Liquidated Damages on Unpaid Contributions Calculated Through 5/8/15 | | $12,638.10 |
| Interest on Late-Paid Contributions | | $1,696.00 |
| Liquidated Damages on Late-Paid Contributions | | $10,631.82 |
| Audit Fees | | $350.00 |
| Attorneys' Fees | | $14,465.90 |
| Costs | + | $466.87 |
| ---------------------------------------------------------------------- | | |
| | | **$108,418.69** |
| Daily Interest on Unpaid Contributions From 5/9/15 Through Entry of Judgment | + | $27.38 |
| Continued Accrual of Liquidated Damages on Unpaid Contributions From 5/9/15 Through Entry of Judgment | + | $27.38 |

The Court further recommends that the branch of Plaintiffs' motion seeking injunctive relief be denied. Finally, the Court recommends that Plaintiffs' request for actual unpaid contributions based on a sampling of pay stubs from six specific Griffin employees be denied without prejudice and with leave to present additional evidence that the Estimated Audit does not already account for these amounts.

## VI. Objections

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below. Plaintiffs are directed to serve a copy of it on

Defendant and promptly file proof of serve by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

Dated:      Central Islip, New York
            May 8, 2015

<u>s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge
